MAX HALECK, SR., Plaintiff

v.

H. REX LEE, Governor of American Samoa, Defendant

No. 199-1964

High Court of American Samoa

Civil Jurisdiction, Trial Division

December 12, 1964

George A. Wray, Attorney for Plaintiff.

Alfred J. Gergely, Attorney General of American Samoa, Attorney for Defendant.

OPINION OF THE COURT

ROEL, *Associate Justice.*

Plaintiff, Max Haleck, Sr., by and through his attorney

of record, filed, on October 5, 1964, his complaint against Defendant, H. Rex Lee, present Governor of American Samoa. On October 23, 1964, the Attorney General of American Samoa, Counsel for Defendant, filed his answer. Briefs in support of their case were submitted to the Court previous to the day of the trial by counsel for Plaintiff and Defendant.

At the trial neither party presented any witnesses. They each wholly relied on their argument to the Court, their pleadings, and on their brief.

Plaintiff set down four different counts in his complaint, as basis for his action. Under Count I the complaint sets out the U.S. citizenship and residence in American Samoa of both Plaintiff and Defendant; that under a decree and Order of the Appellate Division of the High Court of American Samoa Tiumalu Taimane executed and delivered a new lease to Plaintiff pursuant to the renewal clause in a 1938 lease from Tiumalu Male to Ho Ching; that the covenant of renewal was declared valid as of 1938 by the decree of September 8, 1959 of the High Court of American Samoa, and constituted as of that date an encumbrance and alienation of the land in question; that the covenant for renewal of 1938 received the approval of Governor Hanson, required by law for its validity under Sections 1282 and 1283 of the Code of American Samoa applicable in 1938: that Defendant, Governor Lee, by and through his advisory Land Commission, has refused to recognize the validity of the renewal lease notwithstanding the execution of the lease approved by Governor Hanson and ordered into execution by the High Court of American Samoa, and that Defendant has attempted to destroy the renewal lease and force upon Plaintiff a substitute lease (Plaintiff's Exhibit C) drawn by the Land Commission which is not agreed between the parties but contains unconscionable, harsh, and oppressive terms; that Defendant bases his action on his belief that the

renewal lease is unenforceable unless and until he grants his signature of approval and that no substitute lease will be permitted to receive such approval other than that which agrees with his judgment of value; that Defendant himself and by his Land Commission has threatened Plaintiff with eviction and dispossession of his lawfully held property under the renewal lease and, if Defendant were to prevail, Plaintiff would suffer a retroactive liability under Paragraph 2(c) of the Land Commission lease (Exhibit C) which he is not prepared to undertake and which if such terms are to be imposed upon him he should know at once that he may take steps now to terminate further liability. Plaintiff concludes his first count by asking the Court to issue a declaratory judgment that the renewal lease as ordered in execution by the High Court of American Samoa of September 8, 1959 and signed by the parties on August 10, 1960 is valid and binding in having received the requisite approval of Governor Hanson and that Defendant, Governor Lee, acting alone or by his advisory Land Commission has no right to ask to interfere and set aside this lawful leasehold.

In Count II, Plaintiff, after adopting all the allegations in Count I, sets out the following: That under the decision of the High Court of American Samoa of September 8, 1959, the covenant for the renewal lease is declared to be an existing and valid contract; that if the technicality of law requires approval of Governor Lee for the validity of the renewal lease, Defendant's refusal is an impairment of an existing and valid contract and he is thereby depriving Plaintiff of his property by an arbitrary and unlawful exercise of governmental power in violation of the Due Process Clause of the Fifth Amendment of the U.S. Constitution.

Plaintiff in Count III of his complaint adopts all the allegations in Counts I and II, and charges that Defendant is depriving Plaintiff of his property by an arbitrary and

unlawful exercise of governmental power in violation of the Due Process Clause of Article I, Section 2, of the Constitution of American Samoa.

In Count IV the Plaintiff adopts all the allegations of Paragraphs 1 through 11 and goes on to claim that the Defendant, Governor Lee, is depriving Plaintiff of his right not to be oppressed by retroactive laws impairing the obligation of contracts which is guaranteed by Article I, Section 13, of the Constitution of American Samoa.

In his prayer, Plaintiff demands as follows: (a) That the Court issue an order in the Nature of Writ of Mandamus requiring Governor Lee to issue his approval of the renewal lease executed under the order of the High Court of American Samoa of September 8, 1959, or in the alternative (b) issue judgment that the statute requiring the Governor's approval for validity of this lease was not meant to be construed and held applicable to a lease under the present circumstances, and such other relief as the Court deems meet.

In Count No. I of his written answer, Defendant's counsel admitted the allegations in Paragraphs 1, 2, 3, 5, and 11 of the Plaintiff's complaint. He also admitted the allegations in Paragraph 4 except the phrase ". . . and constituted as of that date an encumbrance and alienation of this land," which Defendant denied. Defendant admitted refusing to recognize the validity of the renewal lease executed August 10, 1960 as alleged in Paragraph 6, and that he has refused to approve the same, but denies that the substitute lease drawn and recommended by the Land Commission contains unconscionably harsh and oppressive terms. Defendant admits he believes the renewal lease as executed by Plaintiff on August 10, 1960 is unenforceable unless approved by the Governor, as set out in Paragraph 7 of Plaintiff's complaint, but denies that approval of a substitute lease is based solely on his judgment of value but rather upon that recommended by the Land Commission. Defend-

ant denies that he has threatened to evict or dispossess Plaintiff of his lawfully held property as alleged in Paragraph 8 of Plaintiff's complaint, and alleges that he is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in said Paragraph 8. Defendant further denies each and every other allegation contained in Plaintiff's complaint.

In Count II of his answer, Defendant adopts and repeats all of the allegations in Count I. Defendant further alleges that the Court is without statutory authority to issue a declaratory judgment as prayed for in Paragraph 9 of Plaintiff's complaint; Defendant further alleges that the Court is without authority to issue an order in the nature of a Writ of Mandamus as prayed for in Paragraph 17(a) of Plaintiff's complaint since the acts which Plaintiff requests that Defendant be required to perform involve the exercise of official judgment and discretion.

Except for one or two additional cases cited at the trial, both parties relied upon the statements and citations in their individual briefs and on their pleadings in their arguments to the Court.

Previous to the trial of the case, a pre-trial conference was had in the Court's chambers at which counsel for Plaintiff and Defendant were present. In an attempt to narrow down the issues, it was agreed by counsel for both parties that the main point at issue before the Court would be: Is the renewal clause in the 1938 lease such as to make the present lease a "new" lease or merely an extension of the 1938 lease, and that the answer to this question would determine the necessity of Defendant's approval of the 1960 lease. We may say here that at the trial neither side confined itself to this issue alone in their argument to the Court. Because of the nature of the case, the Court felt that the parties should not be precluded from arguing any relevant matter and accordingly allowed counsel ample time and latitude.

525

In his argument to the Court counsel for Plaintiff began with the 1938 lease (Exhibit B) which was assigned by the original lease to Plaintiff in 1953, and that said lease contained a covenant for renewal for twenty (20) years; that assignee of the 1938 lease, Plaintiff, had exercised said covenant for renewal in 1958; that lessor had resisted Plaintiff's right to renew; that in 1959 Plaintiff had sought from the Court of American Samoa specific performance of the covenant to renew; that the High Court of American Samoa had upheld Plaintiff's rights under the covenant in the 1938 lease and had ordered the lessor to execute a new lease with the Plaintiff; that the Appellate Division of the High Court affirmed its decision on appeal; that on August 10, 1960 a new lease was executed between Plaintiff and lessor, pursuant to the Court order of September 3, 1959, in enforcing the covenant to renew; that after the execution of the lease on August 10, 1960, the Land Commission had informed Plaintiff that said lease was not valid because it lacked the approval of the Governor of American Samoa; that the Land Commission presented to the Plaintiff a lease which would receive the approval of the Governor, said lease containing different provisions than those on the lease with the covenant for renewal of 1938.

Counsel for Plaintiff argued that Section 3c of the "Land Commission" lease (Exhibit C) requiring payment of retroactive rent upon approval of the lease by the Governor was in violation of Plaintiff's rights; that the Court issue a declaratory judgment respecting Plaintiff's rights as set out in his complaint; that all the documents submitted by Plaintiff were admitted by the Defendant; whereupon counsel for the Defendant stipulated that Exhibits A, B, and C attached to the Plaintiff's complaint were true copies of the authentic documents. Exhibit A was identified as the lease executed between the parties on August 10, 1960 on order of the Court on September 8, 1959; Exhibit B

was the original 1938 lease; and Exhibit C was the lease presented to the Plaintiff by the Land Commission as being the lease which the Governor would approve.

Counsel for Plaintiff further argued that the matter before the Court was simply an issue of law, not of equity or social justice, only a matter of law as to Plaintiff's rights; that Section 71 of the 1937 Code of American Samoa was the law applicable to the original lease of 1938; that the main issue was whether the covenant for renewal in the 1938 lease is such a lease that it requires the approval of the present Governor; he argued that he did not know what the definition of the word "sanction" in Section 71(3) was, and that arriving at the distinction between words in the statute was a waste of time.

Plaintiff's counsel argued that the covenant for renewal was an alienation of land; that both the words "disposal" and "alienation" included a lease; that the covenant for renewal had received the approval of Governor Hanson in 1938; that the covenant to renew had all the earmarks of a lease itself which required the approval of the Governor, which approval was granted in 1938 by Governor Hanson.

Plaintiff's counsel then argued about the definition of a "lease," and stated that it was a contract for the use of land for a specific time or an instrument by which one is granted the right to occupy land to the exclusion of the lessor.

Plaintiff's counsel further argued that the covenant to renew was itself a lease since all the conditions requisite for the lease were set out; that the covenant in the 1938 lease was in fact a new lease with the amount of rent changed to $35.00 per month; that the decision of the Appellate Division of the High Court of American Samoa held that the covenant to renew was part of the original lease; that Governor Hanson could in 1938 approve a lease to start twenty (20) years hence, since under Section 71(3) Gover-

nor Hanson could approve a lease up to forty (40) years; that all leases for the approval of the Governor are an approval for future leases; that what had happened in 1938 was that Plaintiff's assignor and lessor agreed to a forty year lease, but that Plaintiff's assignor did not have to take the last twenty (20) years of the lease; that a covenant to renew is a present lease agreement for future possession; that Defendant joined issue with Plaintiff on the difference between a contract to grant an estate and a lease; that Defendant considered the covenant an executory contract, but that Plaintiff did not agree it was an executory contract.

Plaintiff's counsel argued that the 1959 decision of the High Court of American Samoa held that there was adequate consideration in 1938 for the validity of the renewal covenant in 1958. Plaintiff's counsel argued that a mere contract to make a lease will not be enforced by specific performance, but that a lease will be enforced by specific performance; that damage is the only remedy for breach of a contract to make a lease; that there is no right to possession in a mere contract to enter into a lease.

When questioned by the Court regarding certain parts of the decision of the High Court of American Samoa, Trial Division, counsel for Plaintiff stated he had not seen or read the decision of the Trial Division of the High Court of American Samoa, a decision to which he had referred on numerous occasions in his argument and brief. When shown a copy of the decision and advised by the Court if he required any time to examine it the Court was willing to give him all the time necessary, counsel for Plaintiff indicated he did not wish to study the decision since the part of the decision referred to was mere dicta and had been overruled by the Appellate Division of the High Court of American Samoa.

The part of the decision by the Trial Division referred to was 3 A.S.R. 391–94. It reads as follows:

"The renewal lease for 20 years from the expiration of the old lease on February 3, 1959, will be a new lease. After its execution it may be presented to the Land Commission for its recommendation to the Governor, pursuant to the provisions of Section 1281 of the A. S. Code.

"Section 1282 provides that 'All instruments affecting the title to land which require the approval of the Governor before becoming effective shall be filed with the Secretary of the Land Commission for study and recommendations thereon by the Commission. The said Commission shall . . . make recommendations to the Governor respecting the approval or disapproval of instruments affecting the title, ownership or possession of land, so submitted for consideration and approval. It shall be the duty of the Commission to endeavor to prevent the monopolistic ownership of land and *improvident alienations of communal lands* (emphasis added) by those charged with the management and control thereof.'

"Section 1280 of the Code provides that 'As used in this Chapter "Alienation" shall mean the sale, gift, exchange, or any other method of disposal.' A renewal lease of the land will dispose of an estate for 20 years in it. An estate for years is frequently treated as an interest in land. See *Fidelity Trust Co. v. Wayne County*, 244 Mich. 182, 59 A.L.R. 698.

"Section 1283 of the Code provides that 'Native land may, with the approval of the Governor, be leased to any person for any term not exceeding thirty (30) years for any purpose, except for the working of minerals, and cutting of timber.'

"We think that Sections 1281 and 1283 constitute a proper exercise of the police power of the Government to protect the owners of communal lands from improvident dispositions of their property by lease or otherwise.

"In the exercise of its police power, the Government may see to it that a lease provides for an adequate and reasonable rental under existing conditions or in effect prohibit the making of the lease through the intervention of the Land Commission and the Governor, unless it provides for a sufficient rental so as not to make the transaction improvident with respect to the owner of the Samoan communal land. The Samoan people need protection against improvident transactions such as disposing of their property for less than it is worth.

"The provision in Section 10 of Article 1 of the U.S. Constitution to the effect that 'No State shall . . . pass . . . any law impairing the obligation of contracts' is a limitation upon the power of a State, not a U.S. possession as is American Samoa.

"In *Home Bldg. & Loan Assoc. v. Blaisdell* (1933), 290 U.S. 398, 88 A.L.R. 1481, a Minnesota statute extended the period of redemption from a mortgage foreclosure. This was during the time of a great economic distress in United States in the early 1930's. The Supreme Court of the United States upheld the statute as a proper exercise of the police power of the State for the protection of the economic interests of the people despite the prohibition against the impairment of the obligation of contracts clause in Article 1, Section 10, and the due process and equal protection clauses in the 14th Amendment. Speaking with reference to the constitutional prohibition against the passage of laws by a state which impair the obligations of a contract, Mr. Justice Brewer in *Long Island Water Supply Co. v. Brooklyn,* 166 U.S. 685, 692, said: 'But into all contracts, whether made between States and individuals, or between individuals only, there enter conditions which arise not out of the literal terms of the contract itself; they are superinduced by the pre-existing and higher authority of the laws of nature, of nations or of the community to which the parties belong; they are always presumed, and must be presumed, to be known and recognized by all, are binding upon all, and need never, therefore, be carried into express stipulation, for this could add nothing to their force. Every contract is made in subordination to them, and must yield to their control, as conditions inherent and paramount, wherever the necessity for their execution shall occur.' An examination of the decisions of the U.S. Supreme Court interpreting the prohibition against the impairment of the obligation of contracts will reveal that it is not absolute.

"Mr. Justice Reed in *Veix v. Sixth Ward Building and Loan Association,* 310 U.S. 32, 38, said: 'In *Home Building and Loan Association v. Blaisdell* (290 U.S. 398, 434) this Court considered the authority retained by the State over contracts "to safeguard the vital interests of its people." The rule that all contracts are made subject to this paramount authority was there reiterated. Such authority is not limited to health, morals and safety. It extends to economic needs as well. Utility rate contracts give way to this power, as do contractual arrangements between landlords and tenants.'

"Section 1281 respecting the creation and duties of the Land Commission was enacted into law on June 24, 1947 (It was enacted as Amendment No. 8-1947) which was after the November 1, 1938 lease was executed by Tiumalu Male and Ho Ching. But it was in effect when Haleck took the assignment of the lease from the Ho Ching heirs in 1954 and 1955."

Counsel for Plaintiff argued that the consequence of the exercise of the option for renewal was that which was the intention of the parties; that the Court would have to decide what the intention of the parties was; that it was the conscious intention of the parties to make the exercise of the renewal option a lease and not a contract for a lease; that all terms of the lease were agreed upon and that there was nothing more intended to be done by the parties; that where the parties have agreed upon all the terms of a lease, there is an actual lease, even if executed later.

Plaintiff's counsel further argued that at the time of the execution of the 1938 lease, there was no competent lawyer in American Samoa and that there was no considered attempt at the time to draft a fool-proof legal instrument, and that the Court should not seriously consider accidental language such as "new" as appeared in the 1938 lease; that a covenant to renew runs with the land and that the Court of American Samoa had so held; that the Court had to live with its holdings; that a covenant to renew was either a contract to lease or a lease running with the land.

Counsel for Plaintiff argued that since the 1949 Code sets out a penalty for entering into a lease without the approval of the Governor, when the Court ordered specific performance of the lease between the parties it had in fact decided that the Governor had approved said lease; that the Court would only have to affirm the decree of September 1959 by the Appellate Division of the High Court of American Samoa and that the Plaintiff's rights would be settled to the extent that the lease had received the approval of the Governor; that if the Court upheld Defendant's position, it

531

would outlaw all covenants to renew and would preclude the Governor from approving future covenants for renewal of leases; that the present Governor was attempting to revoke the approval by Governor Hanson; that the lease does not require the further approval of Governor Lee. Plaintiff's counsel indicated he did not know what the Defendant's position on the law was; that if mere technicalities necessitate Governor Lee's signature on the lease, he is required to sign it.

Counsel for Plaintiff made reference in his argument to Article I, Section 13, of the Constitution of American Samoa in connection with the Plaintiff's right against the impairment of contracts. He then made reference to the police power clause in the same constitution, and argued that specific language will prevail over general language in the constitution; that the extent of the authority from the police power was not clear in the Constitution of American Samoa; that the law is unconstitutional if the new lease has to be approved by Governor Lee.

Plaintiff's counsel further argued that under Section 1282 a leasehold interest did not affect title and that the Land Commission had no position to comment upon leases. He then questioned the definition of "title" and argued that Section 1281 gave the Land Commission power to approve "title" not "possession."

Counsel for Plaintiff argued that if the terms of a lease are so low something must be done and there should be more rent. He stated that his client, the Plaintiff, was willing to renegotiate for an increased rent with the lessor, Tiumalu, but that he was very sensitive to the government's interference with his rights and that Plaintiff would not have their contract broken by the Government of American Samoa. When questioned if the lessor, Tiumalu, joined the Plaintiff in the above sentiments, counsel answered in the

negative. He argued that the Governor had over-stepped his authority after the Court ordered specific performance of the lease as between Plaintiff and Tiumalu; that the rule of law should prevail over social justice or over the social consciousness of the government. Counsel for Plaintiff again stated that Plaintiff was willing to adjust the lease contract, but not to be forced by the government. He did not reveal to what extent Plaintiff was willing to adjust the rental.

Counsel for Plaintiff then argued regarding his request for a declaratory judgment and Writ of Mandamus as remedies on behalf of Plaintiff. He argued that notwithstanding Defendant's objection to a declaratory judgment, no statutory authority for such a remedy was needed and that statutory authority was already granted; that a declaratory judgment was only a procedural remedy. He then proceeded to talk about constitutional and legislative courts in connection with their powers to issue declaratory judgments; that the Court of American Samoa was a constitutional and not a legislative court; that according to Section 3.0608 of the Code of American Samoa, 1961 Edition, "U.S. Federal Rules of Procedure should be followed as closely as practicable." He then agreed that it was up to the Chief Justice of American Samoa to determine whether a declaratory judgment could issue from this Court, concluding that the Court may issue a declaratory judgment. Counsel cited a Virgin Islands case regarding declaratory judgment, *Ottley v. DeJongh*, 149 F.Supp. 75.

In connection for his request for a Writ of Mandamus against the Defendant, counsel for Plaintiff argued that the Attorney General did not dispute that the Court could issue Writs of Mandamus but that a Writ of Mandamus would not issue to require the Executive exercise acts which were discretionary. He argued that if the approval of the Governor of the lease is required, then a Writ of Mandamus

must issue, saying that the approval of the Governor, if if necessary, was only ministerial and not discretionary and hence a Writ of Mandamus should issue.

Counsel for Plaintiff then reiterated his requests for remedy set out in his pleadings.

Answering the argument by counsel for Plaintiff, the Attorney General of American Samoa, acting as counsel for Defendant, Governor Lee, stated that he conceded that Plaintiff's Exhibits A, B, and C were authentic; that the Defendant has declined to approve the 1960 lease between Plaintiff and Tiumalu (Exhibit A).

Defendant's counsel argued that throughout the period since the United States was granted possession of American Samoa in 1900 there was reflected a policy on the part of the government to protect the communal lands for the benefit of the Samoan people. He indicated that the first regulation to protect communal land was enacted by Commander Tilley on April 30, 1900, only thirteen days after the raising of the American flag; that the second regulation for the same purpose was Section 71(3) of the 1937 Code of American Samoa, incorporating the law which had been in existence since April 30, 1900; that it was this law, Section 71(3), which governed the original 1938 lease; that the policy of protecting communal lands for the people of Samoa was continued with the enactment of Sections 1282 and 1283 of the Code of American Samoa, 1949 Edition, where the word "sanction" was changed to "approval" and the word "commandant" to "Governor." Counsel for Defendant argued that for sixty-four years—since the raising of the American flag in Samoa—the approval of the Governor was required for leases of communal land.

Counsel for Defendant answered Plaintiff's argument that Section 1281 referred only to "title" by stating that Section 1283 clearly requires the approval of the Governor for the "leasing" of land. He argued that the Governor may

ask the help of the Land Commission or anybody else for guidance and that the Governor is not bound by the findings of the Land Commission.

Counsel for Defendant argued that if the communal land had not been or was not protected by the government, most of the Samoans would have no land left. He argued that Article I, Section 3, of the Constitution of American Samoa specifically provides for a policy by the government to protect Samoans in connection with their lands, *Policy protective legislation;* that this provision is in the Bill of Rights of the Constitution, the same place as is found the impairment of contract clause. He argued that Section 1283 of the Code of American Samoa, 1949 Edition, was in existence in 1960 when the constitution was considered and passed and that said constitution became effective on October 17, 1960; that if the framers of the constitution had wished to do away with the requirement of the Governor's approval for the validity of a lease, the Constitutional Convention could have changed the law, but instead they strengthened the section by specifically mentioning it in the constitution and by providing that no law regarding the alienation of land should become effective unless it was approved by a two-thirds majority of each house at two different consecutive legislative sessions and approved by the Governor; that there could have been no possible stronger endorsement by the Constitutional Convention of the existing statutes protecting the land for the Samoan people.

Counsel for Defendant argued that the statute prohibiting the alienation of communal land without the written approval of the Governor is a proper exercise of the police power and is not unconstitutional. He made reference to 3 A.S.R. 391, decision of the High Court of American Samoa, Trial Division, in the case of *Haleck v. Tiumalu* where the Court found that Section 1283 of the Code of American Samoa, 1949 Edition, was a proper exercise of

the police power. He also referred to the case of *Home Building and Loan Association v. Blaisdell*, 290 U.S. 398, and *Long Island Water Supply Co. v. Brooklyn*, 166 U.S. 685. Counsel for Defendant argued that as assignee of the 1938 lease, Plaintiff came under the then existing law regarding alienation of lands; that the covenant for renewal called for a "new" lease; that a covenant to renew was different from a covenant to extend a lease; that the covenant was merely a contract to grant an estate; that the presence of the word "new" in the 1938 lease was no accident of language; that Governor Hanson may have insisted on the term "new" to make sure that twenty (20) years hence the then Governor would have an opportunity to re-examine the lease before approving it.

Counsel for Defendant referred to Page 10 of his submitted brief to argue the difference between renewal and extension. He cited *Arnett v. Lewis*, 45 N.E.2d 313, to the effect that an extension created an additional term but that a provision for a renewal did not of its own force create a new term; that a provision for renewal merely creates an obligation to execute a new lease for the additional term. He also referred to 32 Am.Jur. 978 to make the same point.

Answering Plaintiff's counsel's argument that the Plaintiff was willing to negotiate with Tiumalu for more money in consideration for the new lease, Defendant's counsel stated that the fact was that the Plaintiff had signed the lease in August of 1960 for only $35.00 per month. He rejected Plaintiff's counsel's charge that the Governor had "cornered" Plaintiff, saying that if the rental offered by Plaintiff had been more the matter would not have reached the courts.

Defendant's counsel cited the case of *Twentieth Century Assoc. v. Waldman*, 294, N.Y. 571, 162 A.L.R. 197 regarding a maximum rental law in New York to argue that the refusal of Governor Lee to approve the renewal lease is not

an unconstitutional exercise of the police power, arguing that said case was quite relevant to the matter before the Court; that where there is a valid exercise of the police power, due process must give way. Defendant's counsel argued that Plaintiff's contention that the rule of law must prevail over social justice assumes that the parties are dealing on an equal basis, and stated that the Samoan Matai who negotiated the 1938 lease with Ho Ching was certainly not negotiating on an equal basis and most probably did not realize what the value of the land involved would be twenty (20) years hence; that the reason for the law requiring approval of the Governor for the validity of a lease is to protect the Samoan people who cannot properly protect their own interests; that that was the reason why the 1938 lease called for a "new" lease and not an extension.

Counsel for Defendant argued that there was no statutory authority in American Samoa to empower the Court to issue a declaratory judgment and referred to 26 C.J.S., Section 4, Declaratory Judgment. He argued that no declaratory judgment had ever been issued by the Courts of American Samoa; that the Court gets its authority from the Constitution and not from independent authority, citing 21 C.J.S. 120, 121, 122, 170, 179.

Defendant's counsel argued that a Writ of Mandamus cannot issue against the Defendant, Governor Lee, for the reason that the approval of a lease would entail official judgment and discretion on the part of the Governor, and that Plaintiff's counsel agreed that if the act is discretionary a Writ of Mandamus will not issue; that Plaintiff's counsel is wrong in saying the approval by Governor is only ministerial and not discretionary; that the new lease is subject to approval of the Governor under Sections 1281 and 1283 of the Code of American Samoa, 1949 Edition.

Counsel for Defendant argued that Plaintiff's demand for a declaratory judgment and Writ of Mandamus should be denied by the Court.

In rebuttal argument, counsel for Plaintiff stated that Defendant's authorities regarding the difference between a covenant to renew and a contract to make a lease were not exhaustive; that the matter depends on the substance of the contract and the intention of the parties. He stated he agreed with *Mutual Paper Co. v. Hoague-Sprague Corp.* as cited on Page 10 of the Defendant's brief, and that the question was whether the renewal covenant had all the necessary elements to make a binding lease. He argued that the High Court of American Samoa had held that that renewal created a new term of lease. Plaintiff's counsel went on to argue that Defendant's speculation that Governor Hanson would want the approval of the Governor twenty (20) years hence was fanciful, and if that had been the case Governor Hanson would have only permitted a twenty (20) year lease.

Plaintiff's counsel argued again that if Tiumalu had not objected to the execution of the lease, the Plaintiff would have raised the rent; that the Plaintiff had a very sensitive sense of dignity and did not want to be told about his rights.

Counsel for Plaintiff argued that he admitted that a contract for a lease was not valid till it received the Governor's approval, but that the fact that the Court had ordered specific performance of the lease indicated that the covenant was not only a contract to lease but an extension of the original lease. He presented five propositions for Plaintiff as follows:

1. That the covenant to renew constituted a lease which received the approval of Governor Hanson in 1938;

2. That all conditions of the lease were defined and agreed to;

3. That the High Court of American Samoa ordered specific performance of the lease and the Court would not have so ordered if the covenant was only an executory contract;

4. That the High Court of American Samoa could not have ordered specific performance of an invalid lease;

538

5. That the ambit of a decision by the Court against Plaintiff would be to outlaw covenants for renewal in American Samoa.

In closing, counsel for Plaintiff argued that what was the intention of the parties regarding the covenant for renewal was a matter for the Court to decide.

Let us now then consider the pleadings of the Plaintiff. The first three paragraphs of Plaintiff's petition are uncontradicted.

The allegations in Paragraph 4 are admitted by the Defendant except the phrase "and constituted as of that date an encumbrance and alienation of this land." We are of the opinion that the covenant for renewal in the 1938 lease did not constitute an alienation and encumbrance of the land and that the decree of the High Court of American Samoa of September 8, 1959, did not so hold. The fifth paragraph of the 1938 lease reads as follows:

". . . And the said party of the first part further covenants with the said party of the second part that he (the party of the first part) on demand of the said party of the second part, and, upon *expiration of this lease, will enter into and execute a new lease* for a period of twenty years under the same terms as set forth herein except that the monthly rental shall be at the rate of thirty-five (35) dollars per month." (Emphasis added.)

The first paragraph of the Decree of the High Court of American Samoa, Trial Division (3 A.S.R. 391), reads as follows:

"The renewal lease for 20 years from the expiration of the old lease on February 3, 1959 *will be a new lease*. After its execution it may be presented to the Land Commission for its recommendation to the Governor, pursuant to the provisions of Section 1281 of the American Samoa Code." (Emphasis added.)

Paragraph 3 of Plaintiff's complaint reads as follows:

"Under the Decree and Order of the Appellate Division of the High Court of American Samoa on September 8, 1959, Tiumalu Taimane executed and delivered on August 10, 1960 *a new lease* to

Plaintiff (Exhibit A) pursuant to the renewal clause in a lease of November 1, 1938 from Tiumalu Male to Ho Ching. (Exhibit B.) (Emphasis added.)

The fourth paragraph of the decision of the Trial Division of the High Court of American Samoa in the case of *Haleck v. Tiumalu Taimane*, 3 A.S.R. 380, reads as follows:

"In September, 1919, Tiumalu Lailai, the then matai of the Tiumalu Family, leased a portion of the land covered by the lease in litigation to Ho Ching for 15 years at a yearly rental of $84.00. In September, 1925, the same parties entered into a *new* lease for 15 years from September 1, 1925, at a yearly rental of $240.00. . . ." (Emphasis added.)

The 1925 lease was surrendered twenty-two (22) months before its expiration and the same parties entered into a *new* lease in November 1938, the lease now in question. (Emphasis added.)

From the quoted language in the 1938 lease and the language quoted from the decision of the High Court of American Samoa, Trial Division, it appears to the Court that the intention of the parties was to execute a new lease at the expiration of the 1938 lease. Whether the language in the Plaintiff's complaint in using the word "new" was accidental or legal is of little import. The issue of the 1938 lease was completely gone into by the Trial Court in the case of *Haleck v. Tiumalu*. The Court there had the benefit of evidence and testimony by both parties, and was certainly in a good position to arrive at the intention of the parties as to whether the renewal lease was a *new* lease or an extension of the old lease. The language of the Court is unequivocal in saying that the new instrument to be executed between Haleck and Tiumalu was to be a new lease. And if this were not enough, the history of dealings between the Tiumalu Family and Ho Ching, the Plaintiff's assignor, is that a *new* lease has been entered between the parties at the expiration of each previous lease.

540

The allegations in Paragraph 5 of Plaintiff's complaint are incorrect to the extent that he says that Sections 1282 and 1283 of the Code of American Samoa were applicable in 1938. Sections 1282 and 1283 first appeared in the 1949 Edition of the Code, but were enacted in 1947. The law applicable in 1938 was Section 71(3) of the 1937 Code. Certainly there was no evidence introduced as to the interpretation Governor Hanson might have accorded the covenant for renewal.

In connection with Paragraph 6 of Plaintiff's complaint, there was no evidence presented to prove the allegation that the substitute lease drawn and recommended by the Land Commission contains unconscionably harsh and oppressive terms.

Plaintiff presented no evidence to substantiate the allegation in Paragraph 7 of his complaint to the effect that Governor Lee will permit no substitute lease to receive his approval other than that which agrees with his personal judgment of value. We believe it is clear from the Plaintiff's pleadings and the arguments before this Court that Governor Lee has sought the guidance of the Land Commission in using his discretion regarding the approval of said lease.

There was no evidence presented to substantiate Plaintiff's allegations in Paragraph 8 of his complaint to the effect that either Governor Lee or the Land Commission has threatened Plaintiff with eviction and dispossession of his lawfully held property. In connection with the retroactive liability under Paragraph 2(c) of the Land Commission lease, the same provision for retroactive rent is included in Exhibit A, the lease between Haleck and Tiumalu.

In connection with Paragraph 11 of Plaintiff's complaint that under the decision of the High Court of American Samoa on September 8, 1959, the covenant for the renewal lease is declared to be an existing and valid contract, the Court unquestionably held that the lease was

to be a new lease, to be presented to the Land Commission for recommendation to the Governor pursuant to Section 1281 of the Code of American Samoa. An obligation as between the parties to a lease will not deprive the Governor of his power to consider and determine whether to approve or not said lease through authority given to the Governor under the law. It is not only the right but the duty of the Governor to examine instruments of lease before his approval. Even if the parties inserted a provision in the lease instrument doing away or even objecting to the exercise of the power of the Governor to approve, the lease must still be approved by the Governor under the provisions of Sections 1281 and 1283 of the 1949 Code. As if this were not enough, the Governor is charged with protecting the Samoan people regarding the alienation of their lands under Section 3, Article I, of the Constitution of American Samoa. This policy is reiterated in the last sentence of Section 9, Article II, of the Constitution of American Samoa. The Governor is further charged under Section 2, Article IV, of the Constitution of American Samoa as follows:

"The executive power shall be vested in the Governor of American Samoa, who shall take care that the laws be faithfully executed. . . ."

■ Section 2, Article V, of the Constitution of American Samoa reads as follows:

"Existing laws: In addition to the continuance of certain laws as provided for by Section 3 of Article III of this Constitution, all other laws of American Samoa not inconsistent with this Constitution shall continue in force until they expire by their own limitation or are altered or repealed by competent authority."

■ Sections 1281, 1282, and 1283 of the Code of American Samoa, 1949 Edition, were part of the existing law when the Constitution was prepared and ratified in 1960, and continue in force to this day. Section 8, Article V, of the Constitution reads:

542

"The enumeration in this Constitution of specified powers *shall not be construed* as limitations upon the power of the Government of American Samoa to provide for the general welfare of the people." (Emphasis added.)

Plaintiff's allegations in Paragraph 12 of his complaint that, "If the technicality of law requires the approval of the current Governor, H. Rex Lee, for the validity of this renewal lease, then his refusal is an impairment of an existing and valid contract and the Defendant Governor is thereby depriving the Plaintiff of his property by an arbitrary and unlawful exercise of governmental power in violation of the Due Process Clause of the Fifth Amendment of the United States Constitution," appears to indicate that the approval of the lease by Governor Lee, if necessary at all, is only a ministerial act, and that the Defendant has no choice but to approve it. Counsel for Plaintiff argued that if the approval of the lease constituted a discretionary act on the part of the Governor that such exercise of power was under Sections 1281 and 1283 of the Code of American Samoa, 1949 Edition. Counsel for Plaintiff admitted further in argument that the provisions of Sections 1281 and 1283 of the 1949 Code are proper under the police power, and if the Governor was acting properly under said legislation, the necessity for approval by the Governor of such a lease would not be in violation of the Due Process Clause of the Fifth Amendment of the United States Constitution. But Plaintiff argued that the renewal lease now in question was approved by Governor Hanson in 1938, and that Defendant's approval, if required, would only be a ministerial act requiring no discretion but merely ratifying the approval by Governor Hanson in 1938.

In connection with Paragraph 14 of Plaintiff's complaint, except for general argument, Plaintiff's counsel presented no evidence to prove his allegation that the Defendant was depriving Plaintiff of his property by an arbitrary and

unlawful exercise of governmental power in violation of the Due Process Clause of Article I, Section 2, of the Constitution of American Samoa.

■ Plaintiff's counsel failed to support or prove his allegations set out in Paragraph 16 of his complaint to the effect that the Defendant is depriving the Plaintiff of his right not to be oppressed by retroactive laws impairing the obligation of contracts which is guaranteed by Article I, Section 13, of the Constitution of American Samoa. Section 13 of Article I of the Constitution of American Samoa reads:

"Retroactive laws: No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts shall be passed."

Although the parties agreed in pre-trial conference that the only real issue was whether, at the exercise of the option by Plaintiff, the covenant for renewal in the 1938 lease gave rise to a new lease or was merely an extension of the original lease not necessitating the approval by Defendant, Governor Lee, this Court nevertheless will consider three propositions, as follows:

1. Are the laws dealing with limiting or restricting the alienation of communal land in American Samoa constitutional?

2. Is the Governor of American Samoa violating his constitutional prerogatives and responsibilities of his office by attempting to carry out the legislative mandate as enunciated in legislation enacted concerning the alienation of communal land in American Samoa?

3. Was the lease entered into between Plaintiff and Tiumalu Taimane dated August 10, 1960, pursuant to an order of the High Court of American Samoa a new lease requiring the approval of the Defendant Governor for its validity or was it merely an extension of the original lease to such an extent that it would amount to the approval of a forty (40) year lease by Governor Hanson in 1938, making the approval by Defendant unnecessary for its validity?

■ It is an indisputable fact that since the raising of the American flag in April 17, 1900, to the present, it has

been the uninterrupted policy of the Government of American Samoa to protect Samoan communal lands for the benefit of the Samoans. The concern for the preservation of land for the benefit of the natives of American Samoa was expressed in general terms as early as April 17, 1900, in the Instrument of Cession from the Chiefs of Tutuila to the United States Government. Thereafter, the first specific regulation restricting the alienation of land in American Samoa was promulgated on April 30, 1900, thirteen (13) days after the Instrument of Cession. This was "The Native Lands Regulation, 1900." Section 4 of said regulation reads:

"Native land may, with the sanction of the Commandant be leased for any term not exceeding forty years for any purpose (except for the working of minerals and cutting of timber)."

Thereafter Section 71, "Alienation of Native Lands" was enacted as part of the 1937 Codification of the Regulations and Orders for The Government of American Samoa. Paragraph 3 of said section reads:

"Native land may, with the sanction of the Governor, be leased for any term not exceeding 40 years for any purposes, except for the working of minerals and cutting of timber. . . ."

Other paragraphs in the same Section 71 also deal with restrictions on alienation of land. In the same vein Sections 1281 and 1283 appear in the 1949 Edition of the Code of American Samoa.

Section 1281 reads as follows:

"There is hereby created a Land Commission which shall consist of five members who shall serve ex officio as follows: The Chief Justice, who shall serve as Chairman; the Registrar of Titles, who shall serve as Secretary; and the three District Governors of the Government of American Samoa.

"All instruments affecting the title to land which require the approval of the Governor before becoming effective shall be filed with

the Secretary of the Land Commission for study and recommendations thereon by the Commission. The said Commission shall meet from time to time upon call of the Chairman and make recommendations to the Governor respecting the approval or disapproval of instruments affecting the title, ownership or possession of land, so submitted for consideration and approval. It shall be the duty of the Commission to endeavor to prevent the monopolistic ownership of land and also improvident alienations of communal lands by those charged with the management and control thereof. The said Commission shall also conduct studies and make recommendations to the Governor for the improvement of the registration, recording and indexing of instruments affecting land and property rights and also respecting the surveys and plotting of land. The said Commission shall also make such general recommendations to the Governor as may be considered appropriate for the maintenance of orderly and permanent records respecting the ownership of land and other property. The said Commission shall make such rules governing its procedure as it shall deem proper."

### Section 1283 reads:

*"Native land may, with the approval* of the Governor, be leased to any person for any term not exceeding thirty (30) years for any purpose, except for the working of minerals, and cutting of timber." (Emphasis added.)

█ This Court is of the unanimous opinion that the present law dealing with alienation of communal or native land in American Samoa as set out in Sections 1281 and 1283 of the Code of American Samoa, 1949 Edition, is constitutional. At the time the Plaintiff became the assignee of the 1938 lease in 1953, Sections 1281 and 1283 were the law in American Samoa. The Court is further of the unanimous opinion that Section 71 of the 1937 Edition of the Code of American Samoa was the law regarding the alienation of land in 1938 and was constitutional.

Such legislation is constitutional as being within the proper and reasonable exercise of the police power. Section 16 C.J.S. 897–906 Constitutional Law, Section 175:

"b. Scope

"Although it is difficult definitely to fix the bounds of the police power of the state, and although it is usually considered better to decide as each case arises whether or not the police power extends thereto, it may be said, as a general rule, that the possession and enjoyment of all rights are subject to a reasonable exercise of the police power, and that the police power extends to all great public needs.

"Although it is liberally understood and applied, it is difficult, if not impossible, definitely to fix the bounds of the police power of the state, since it represents the state's great reserve power. Indeed, it is deemed inadvisable to attempt to frame any definition which shall absolutely indicate the limits of the police power by including everything to which it cannot extend, since the courts consider it better to decide as each case arises whether the police power extends thereto, as the power is coextensive with the necessities of the case and the safeguards of the public interest. It has been said, however, that the exercise of the police power in any given direction is capable of definite expression.

"Notwithstanding the impossibility of exact definition of the scope of the police power, numerous efforts have been made to define its scope in a general way. It has been said that the scope of the power is as broad as the public welfare or necessity, and must be exercised in the interest thereof, that it is one of the least limitable of the powers of government, and that the police power is the broadest in scope of any field of governmental activity. Within the realm of police power the legislature may act in any matter not forbidden by the constitution expressly or by necessary implication. It extends to all matters which concern the regulation and control of the internal affairs of the state, and almost the whole of the great body of municipal law which establishes and enforces the duties of citizens to each other is embraced within and known as the police power. A state in suppressing what it regards as a public evil may adopt any reasonable measures which it may deem necessary, and the reasonableness of a police regulation is not necessarily what is best, but what is fairly appropriate under attendant circumstances. The police power of a state is not to be measured by the criteria applicable to cities and towns.

"The possession and enjoyment of all rights are subject to a reasonable exercise of the police power, and everything contrary to public policy or inimical to public interest is subject to its exercise.

547

The police power of the state extends to all great public needs, including the protection and promotion of the safety, health, comfort, and quiet of all persons, and the protection of *all property* within the state, *and the execution of all contracts affecting such matters,* as well as the prevention of discrimination and economic oppression, and the promotion of the public convenience and general prosperity. Such power is not confined to the physical welfare of the public, but includes the general intellectual and moral well-being and development; it extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community. In enacting police regulations, a state is not bound to cover the entire field of possible abuses. The police power extends to the enactment of all laws which, in contemplation of the constitution, are reasonably necessary to promote the welfare of the public, as distinguished from the interest of a particular class, and under such power the state has authority to enact laws applicable to particular classes, although as shown infra 195, the legislature may not exercise the police power for private purposes or for the exclusive benefit of individuals or classes. The legislature may prohibit or regulate, in the public interest, either a general practice or a single transaction of a kind that is not likely to occur otherwise than as an instance of a general practice. A statute may be sustained although some of the objects affected by it may be wholly innocent; and acts innocent and innocuous in themselves may be prohibited if necessary to secure an efficient enforcement of valid police regulations. The power to prohibit the sale of an article or the doing of a thing necessarily carries with it the lesser power of regulation. The proper exercise of the police power is not confined to the suppression of matters which are offensive or constitute nuisances. The legislature can also declare that acts which might be unlawful if carried to excess, by reason of their general tendency to annoy and injure others, may be lawfully done on such conditions as it may prescribe. Incidental injury to an individual will not prevent operation of the police power.

"It has been said that the police power is not a fixed quantity and that it changes from time to time to meet changed conditions of society, and a police regulation, valid when made, may become arbitrary and confiscatory in operation by reason of later events. It is more accurate to say, however, that the power itself remains the same, and that its apparent extension is only the application of the

548

principle on which it is based to new conditions as they arise. Its scope is greater in an emergency.

"The state may exercise its police power whenever the public interests demand it. The police power is not exhausted by being once exercised on any subject falling within its scope, but it may be exercised repeatedly as often as occasion may require. The right to exercise the police power is a continuing one, which is not lost by nonexercise, but remains to be exerted as local exigencies may demand. Accordingly, a court of equity is without authority to exempt anyone from the burden resulting from a lawful exercise of the police power even though such exercise is long delayed." (Emphasis added.)

■ In *Max Haleck, Sr. v. Tiumalu Taimane*, No. 3-1959, this Court stated:

"In the exercise of its police power, the Government may see to it that a lease provides for an adequate and reasonable rental under existing conditions or in effect prohibit the making of the lease through the intervention of the Land Commission and the Governor, unless it provides for a sufficient rental so as not to make the transaction improvident with respect to the owner of the Samoan communal land. *The Samoan people need the protection against improvident transactions such as disposing of their property for less than it is worth.*"

Commenting on the subject of police power, Rottschaefer on Constitutional Law at Pages 485–6 states:

"The legislative power to fix maximum prices has frequently been held compatible with the requirements of the due process independently of the existence of the facts denoted by the technical conception 'affected with a public interest.' Federal statutes limiting the amount chargeable by attorneys for prosecuting various kinds of claims against the United States do not violate the due process clause of the Fifth Amendment, even as applied to contracts for such services antedating such statutes. Nor is the similar clause of the Fourteenth Amendment violated by state statutes limiting the fees of attorneys for services in connection with proceedings under state workmen's compensation acts. *The principal reason for these decisions was the tendency of such legislation to prevent the danger of oppression, extortion and improvident bargains,*

549

*and the socially injurious consequences thereof.* This is also the ultimate basis for sustaining usury statutes, and such provisions in small loan acts as those that treat wage assignments as loans subject to the interest rate provisions of such acts. Legislative price-fixing is sustained in cases such as those just discussed *because it directly protects a limited social group from oppression and extortion to which a system of prices determined by individual bargaining exposes them,* and thus indirectly protects society at large against effects that the legislatures are free to regard as evils." (Emphasis added.)

The validity of statutes in connection with the exercise of the police power by the state has been many times upheld by the U.S. Supreme Court. See *Home Building & Loan Assoc. v. Blaisdell,* 290 U.S. 398; *Nebbia v. New York,* 89 A.L.R. 1469, 1482, 1483; *Hudson Water Co. v. McCarter,* 209 U.S. 349; *Long Island Water Supply Co. v. Brooklyn,* 166 U.S. 685; *Veix v. Sixth Ward Building and Loan Association,* 310 U.S. 32; *Twentieth Century Asso. v. Waldman,* 162 A.L.R. 197.

 It is common knowledge in American Samoa, to the extent that this Court could properly take judicial notice, that the most valuable tangible thing that the Samoan people possess is the land, and that the average Samoan needs statutory protection regarding alienation of land if he is not to lose it forever. Were it not for the statutory protection, it is not an exaggeration to say that a great deal of the communal land would have been lost to the Samoans by this time, either through the generosity, ignorance or incompetence of the Matai or by the irresistible monetary temptation offered either by Samoans with financial means or by Americans and other tourists to this island who would certainly like to acquire real property in this beautiful area. Even with the statutory restrictions there have been occasions when merchants have brought actions in court seeking to foreclose a mortgage on communal land, the consideration for said mortgage having been two or three kegs of beef

for a funeral. This only goes to show that the average Samoan is not quite ready to deal on an equal basis when it comes to business transactions with a more sophisticated, business-trained or perhaps unscrupulous individual.

Land to the American Samoan is life itself. He cherishes the land where his ancestors came hundreds of years ago, and where he and his children were born. Land is the only thing he values above anything else because it belongs to him and will belong to his children, just as it belonged to his predecessors for centuries past. Land is what he lives from, for it is only on the land that he can plant, nurse, and grow his plantations of coconuts, papayas, taro, avocados, breadfruit, bananas, pineapples, citrus, vegetables, and other food. Land is where he cooks his food. Land is where the bones of his beloved ancestors are buried. Land is where he builds his fale, large or small. Land is the material thing he loves most, after his children. Land is the most valuable inheritance he can leave his children when he dies. Land is his greatest horizon between the sea and the sky. Land is the greatest gift from God to him on this earth, after life itself.

The whole fiber of the social, economic, traditional and political pattern in American Samoa is woven fully by the strong thread which the American Samoan places in the ownership of land. Once this protection for the benefit of American Samoans is broken, once this thread signifying the ownership of land is pulled, the whole fiber, the whole pattern of the American Samoan way of life will be forever destroyed.

The Court holds that the existent and past statutes dealing with the alienation of land are within the proper, reasonable and legitimate exercise of the police power and therefore constitutional and that they serve for the benefit and general welfare of all the people of American Samoa. This holding of constitutionality applies not only to Sections 1281 and 1283, but to all the still operative Sections of

Chapter 31 of the Code of American Samoa, 1949 Edition, "Alienation of Communal Lands."

We now come to the proposition, "Is the Governor of American Samoa violating his constitutional prerogatives and responsibilities of his office by attempting to carry out the legislative mandate as enunciated in legislation enacted concerning the alienation of communal land in American Samoa, and is he thereby violating the Plaintiff's rights as guaranteed to him by the Constitution of American Samoa or the United States Constitution, or both?"

It is the unanimous decision of this Court that once the statutes setting out the provisions for alienation of communal land in American Samoa are held to be constitutional, the power, indeed the responsibility of the Governor of American Samoa to consider the terms and conditions of instruments seeking to alienate land, including leases, before he approves them, and to invalidate such transactions until they receive his approval, cannot be questioned or challenged.

The Governor is charged by the legislature with this responsibility; he did not seek to confer or usurp this power unto himself. It is not his prerogative, but his duty. And the Governor's responsibility is not one merely of formality or ministerial; he must use his independent judgment and discretion in arriving at his decision or to whether a certain alienation of land is to be approved or disapproved. The duties of the Governor in this connection are further supplemented and ratified by the Constitution of American Samoa which was ratified and approved on October 17, 1960.

We hold that the legal exercise of his executive powers by the Governor as empowered by the legislature does not in any way deprive the Plaintiff of his property in violation of any provisions of the Constitution of American Samoa or of the Constitution of the United States.

We now come to proposition Number 3, "Was the lease entered into between Plaintiff and Tiumalu Taimane, dated August 10, 1960, pursuant to an order of the High Court of American Samoa, a new lease requiring the approval of the Defendant Governor for its validity, or was it merely an extension of the original lease to such an extent that it would amount to the approval of a forty (40) year lease by Governor Hanson in 1938, making the approval by Defendant unnecessary for its validity?"

Counsel for Plaintiff insists that the covenant to renew was part of the original lease of 1938 and that the lease in question between Plaintiff and Tiumalu of August 10, 1960, is merely an extension of the 1938 lease approved by Governor Hanson and that it does not require the approval of Defendant Governor. Counsel for Defendant argued that the lease now in question is a new lease unquestionably requiring the approval of the Defendant for its validity. We will not repeat the contentions of both sides in this connection set out in their argument and briefs.

There is no question that the lessor, Tiumalu Taimane, entered into the August 10, 1960, lease under protest and only after she had been ordered to execute the said lease by the High Court of American Samoa, Trial Division, on March 4, 1959, and again on September 8, 1959. Tiumalu appealed the decision of the Trial Division ordering specific performance of the lease. Plaintiff did not appeal the decision of the Trial Court.

The Plaintiff's counsel made much of the fact that the Court had ordered specific performance of the lease against Tiumalu, the lessor. There is no question that if Tiumalu had not appealed the holding of the Trial Division, the Plaintiff would have been bound by the decision of the Trial Division of March 4, 1959, in its entirety. Part of the decision of the Trial Division, already quoted on pages 529–531,

is referred to here as if it were set out at this point in the opinion verbatim.

The Plaintiff cannot have his cake and eat it too. If he did not object to the part of the decision above quoted in five (5) years, he cannot now come and say that he was only relying on the opinion of the Appellate Division. The Appellate Division did not consider that part of the Trial Division's decision dealing with the matters set out in pages 529–531. The Appellate Division considered only the points brought up on appeal by Tiumalu. Tiumalu did not challenge the right and duty or the necessity for approval by the Governor before the lease became valid. The Plaintiff is bound by the whole decision and should not use Tiumalu's appeal for his own gain to the detriment of Tiumalu, nor can he use such appeal to restrict the opinion of the Court or thwart the power of the Governor to approve the lease before it becomes valid. The decree of the Court determined the rights as between the Plaintiff and the lessor; it did not and could not deprive the Governor of his authority conferred upon him by law under the police power.

Plaintiff's counsel argued that the nature of the lease in question depended to a great deal on the intention of the parties thereto and of the findings of this Court as to their intention.

The covenant to renew in the 1938 lease reads in part as follows in the fifth paragraph of Page 1:

". . . And the said party of the first part further covenants with the said party of the second part that he (the party of the first part) on demand of the said party of the second part, and, *upon the expiration of this lease, will enter into and execute a new lease* for a period of twenty years under the same terms as set forth herein except that the monthly rental shall be at the rate of thirty-five (35) dollars per month." (Emphasis added.)

The underlined portion of the above provision reads, *"upon the expiration of this lease"* and *"will enter into and execute a new lease."* It does not say "after the first twenty (20) years of this lease," or "at the beginning of the last twenty (20) years of this lease." "Upon the expiration of this lease" means, we hold, at the end of the lease. There is no intention to prolong the twenty (20) year lease, for at the end of the lease there is nothing left of it, and any prolongation must come through the whole mechanism of a new lease.

The second phrase reads, "will enter into and execute a new lease." It does not read "after the first twenty (20) years this original lease will continue except for the increase in rent." It does not provide "This lease shall extend for an additional twenty (20) years upon demand of the lessee." The language appears to this Court very clear and unequivocal. The parties intended the entering into and the execution of a *new* lease. (Emphasis added.) This called for all the formalities and requirements of a lease separate and apart from the original lease for twenty (20) years. The parties did not recite that the additional term of twenty (20) years would attach to the original instrument except for the difference in rent. Neither did the original instrument recite that the lease was for a term of forty (40) years with the lessee having the right to terminate the lease after the first twenty (20) years. We do not believe that the underlined portion above was merely an "accident of words." We believe that it represented the real intention of the parties as the description of the language indicates, in its normal, everyday meaning.

Counsel for Plaintiff implies that Governor Hanson gave his approval to a lease for a term of forty (40) years. We cannot accept this premise. We believe that Governor Hanson only approved a twenty (20) year lease in 1938. If he had wanted to change the wording of the lease to that

effect he would have done so. Governor Hanson merely approved the lease as it was entered into by Plaintiff's assignor and Tiumalu Male. Counsel for Defendant argued that perhaps Governor Hanson insisted on the provision for a "new lease" to make certain that the Governor twenty years later would examine and consider the new lease between the parties. This is only argumentative. We can only go by the provision of the 1938 lease itself, and from this we hold that Governor Hanson only approved a twenty (20) year lease.

Apart from the instrument itself and the possible intention of the parties, we have the decision of the trial court to consider, in determining whether the lease in question is a new lease. The first paragraph on page 529 of the Trial Division's opinion reads,

"The renewal lease for 20 years from the *expiration of the old lease* on February 3, 1959, *will be a new lease*. After its execution it may be presented to the Land Commission for its recommendation to the Governor, pursuant to the provisions of Section 1281 of the Code of American Samoa." (Emphasis added.)

The holding of the Court could not be clearer. There is no doubt that the Court considered this a new lease. Not only that, but it went on to uphold Sections 1281 and 1283, stating that it constituted a proper exercise of the police power of the Government to protect the owners of communal land from improvident disposition of their property.

In Paragraph 3, Plaintiff's complaint reads in part:

". . . Tiumalu Taimane executed and delivered on August 10, 1960 a *new lease* to Plaintiff." (Emphasis added.)

We do not know whether Plaintiff used the word "new" in the context used by the Trial Division in its opinion or whether his use of the word was merely an "accident of language."

■ We will not go into detail to determine whether the covenant to renew was an executory contract or a contract that ran with the original lease. The Trial Division of the High Court of American Samoa granted specific performance to Plaintiff as against Tiumalu Taimane. But we hold that the Court's judgment extended only to the parties to the action and certainly did not bind the Governor or exempt the lease from the provisions of Sections 1281 and 1283. On the contrary, the Court specifically made the new lease subject to 1281 and 1283, including the necessity of its approval by the Governor before it became valid. We hold that the Court held properly in making the new lease subject to Sections 1281 and 1283. 16 C.J.S. 913 Constitutional Law, Section 179, reads in part:

"The police power is of such elasticity that the principle of stare decisis has no application to an exercise of this power; and the Courts cannot decide away that which the state itself cannot contract away."

■ This Court will not consider the question whether the terms of the lease proposed by the Land Commission to the Governor (Exhibit C) are fair, reasonable or proper within Section 1281 of the Code, or whether said terms are unreasonable, unconscionable, arbitrary or harsh to the extent that they amount to confiscation or taking of Plaintiff's property in violation of the Constitution of American Samoa or of the United States Constitution. There was no evidence offered by either party in this connection. We say that since the Legislature and the Constitution of American Samoa place this discretionary power of approving leases on the Governor, it is to be presumed that he is exercising his prerogative within legal limits without being capricious or arbitrary and that he is acting in good faith.

"In the absence of any proof to the contrary, there is a very strong presumption embodied in the maxim, 'omnia praesumuntur rite esse acta,' that public officers have properly discharged the

duties of their office and performed faithfully those matters with which they are charged. Stated in another way, the Courts will presume, in the absence of evidence to the contrary, that public officers have not culpably neglected or violated their official duties and have not acted illegally in the doing of any official act." (20 Am.Jur. 174–175, Sec. 170 and footnotes Evidence.)

After considering the complaint and answer, the argument of counsel, their briefs, and the exhibits introduced, it is hereby ORDERED, ADJUDGED AND DECREED by the Court as follows:

1. That Plaintiff's request that the Court issue a declaratory judgment that the renewal lease as ordered in execution by the High Court of American Samoa on September 8, 1959, and signed in accordance by the Parties on August 10, 1960, is valid and binding in having received the requisite approval from Governor G. W. Hanson, and that the Defendant, Governor H. Rex Lee, acting alone or by his advisory Land Commission has no right to seek to interfere and set aside said lease, be and the same is hereby denied.

2. That Plaintiff's demand that this Court issue an order in the nature of a Writ of Mandamus requiring the Governor, H. Rex Lee, to issue his approval of the renewal lease executed under the Order of the High Court of American Samoa of September 8, 1959, be and the same is hereby denied.

3. That Plaintiff's demand that this Court issue judgment that the statute requiring the approval of the Governor in these circumstances is unconstitutional, be and the same is hereby denied.

4. That Plaintiff's demand that this Court issue judgment that the statute requiring the Governor's approval for validity of the lease was not meant to be construed and held applicable to a lease under the present circumstances, be and the same is hereby denied.

5. That Plaintiff's complaint in its entirety, be and the same is hereby dismissed.

6. That the Defendant, H. Rex Lee, is properly authorized and charged to consider the lease between Plaintiff and Tiumalu Taimane under Sections 1281 and 1283, and that said lease is not valid until approved by the Governor.

7. That the rent on any lease entered into between the parties, Plaintiff and Tiumalu Taimane, and approved by the Governor, be made retroactive to February 1959, the date when the 1938 lease expired.

8. Court costs in the sum of $15.00 to be paid by Plaintiff, Max Haleck, within 30 days.

Done this 12th day of December, 1964.